# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| KEVIN W. MURRAY, | Case No.: 1:16-cv-00355-REB |
| Petitioner, | |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Respondent. | |

Pending is Petitioner Kevin W. Murray's Petition for Review[1] (Dkt. 1), appealing the Social Security Administration's final decision finding him not disabled and denying his claim for disability insurance benefits.[2] *See generally* Pet. for Review (Dkt. 1). This action is brought pursuant to 42 U.S.C. §§ 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On January 22, 2013, Kevin W. Murray ("Petitioner") protectively applied for Title II disability and disability insurance benefits. (AR 8.) Petitioner alleged disability beginning May 17, 2010. (*Id.*) His claims were denied initially on April 30, 2013 and then again on reconsideration on May 31, 2013. (*Id.*) On June 12, 2013, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (*Id.*) On December 5, 2014, ALJ Jesse K.

---

[1] The pleading was titled and framed as a complaint, but is more properly treated as a petition for review, as it seeks review of a final agency action. It will be referred to herein as a petition for review.

[2] Nancy A. Berryhill became the acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted in as the Respondent in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

Shumway held a hearing in Spokane, Washington where Petitioner appeared and testified by video. (*Id.*; AR 24.) Medical expert Dr. Malcolm Brahms, M.D., testified by telephone, and impartial vocational expert K. Diane Kramer also appeared and testified. (AR 24.)

On February 11, 2015, the ALJ issued a Decision denying Petitioner's claim, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 17.) Petitioner timely requested review from the Appeals Council on or about March 3, 2015. (AR 4.) On June 9, 2016, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security. (AR 1.)

Having exhausted his administrative remedies, Petitioner timely filed the instant action, arguing that "[t]he conclusions and findings of fact of the [respondent] are not supported by substantial evidence and are contrary to law and regulation." Pet. for Review 1 (Dkt. 1). Petitioner challenges the sufficiency of the evidence on which the ALJ relied as well as the legal correctness of the ALJ's treatment of a consulting psychologist's reports. *See generally* Pet'r's Br. (Dkt. 17). Petitioner asks for reversal or remand for a supplemental hearing. *Id.*

## II. <u>STANDARD OF REVIEW</u>

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v.*

*Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance (*Trevizo*, 871 F.3d at 674), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight must be given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. <u>DISCUSSION</u>

**A.      Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§

404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since May 17, 2010, the alleged onset date. (AR 10.)

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that cause no more than minimal limitation on an individual's ability to work. SSR 96-3p, 1996 WL 374181 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments,

disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner has the following severe impairments: "degenerative disc disease of the cervical and lumbar spine, osteoarthrosis of the right wrist and hand, and posttraumatic stress disorder (PTSD)." (AR 10.)

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, his claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ found that Petitioner does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 10–12.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work he performed within the last 15 years or 15 years prior to the date that disability must be established, as long as the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) subject to the following.
> He is able to lift up to 20 lbs occasionally and 10 lbs frequently, but not above the

shoulder or below the waist; he can stand up to 2 hours, and walk up to 2 hours in a normal workday; he can push and pull within the weight limits described for lifting and carrying; he can reach overhead occasionally with the left upper extremity, and frequently with the right upper extremity; he can occasionally finger with the bilateral upper extremities; he can frequently climb ramps or stairs, but should avoid climbing ladders, ropes, or scaffolds; he can occasionally stoop, kneel, crouch, and crawl; he can occasionally operate motor vehicles, but should not perform occupational driving requiring a commercial driver's license (CDL); and he is able to perform the mental requirements of semi-skilled work..

(AR 12–13.) The ALJ further found that Petitioner is able to perform his past relevant work as a "teacher's aide II." (AR 16.)

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant is able to do such other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled. Here, because the ALJ found that Petitioner is able to perform his past relevant work as a "teacher's aide II," the ALJ did not need to consider whether there are other jobs that exist in significant numbers in the national economy that Petitioner can perform.

Based on the finding that Petitioner could engage in past relevant work, the ALJ ultimately concluded that Petitioner "has not been under a disability, as defined in the Social Security Act, from May 17, 2010, through the date of this decision." (AR 17.)

**B.    Analysis**

Petitioner argues the ALJ's decision denying benefits is not supported by substantial evidence and is contrary to law and regulation. Pet. for Review 1 (Dkt. 1). First, he argues that

the ALJ erred by failing to obtain updated medical expert testimony regarding Petitioner's mental impairments. Pet'r's Br. 3–5 (Dkt. 17). Second, he argues the ALJ erred in misunderstanding and assigning little weight to the report of consulting psychologist Dr. Haugen. *Id.* at 5–11. Third, he argues the ALJ erred by failing to resolve the conflict between Dr. Haugen's MMPI-2 results and the ALJ's RFC mental limitations findings. *Id.* at 11–12. Fourth, he argues the ALJ's mental RFC is not supported by the record. *Id.* at 12–13. Fifth, he argues the ALJ erred in finding the Petitioner could perform "light work." *Id.* at 13–14. Sixth, he argues the ALJ erred in making an RFC finding given the record's lack of RFC assessments from any physicians. *Id.* at 14–17. Seventh, he argues the ALJ erred in failing to consider all of Petitioner's severe conditions in combination. *Id.* at 17–18.

Several of Petitioner's arguments relate to evidence regarding his mental impairments. As noted above, the ALJ found that Petitioner suffers from PTSD. The record indicates that his PTSD is a consequence of a 2008 head-on motor vehicle collision in which the drunk driver who caused the accident died and Petitioner was injured. (AR 13.) The collision and resultant injuries ultimately caused Petitioner to cease working as a commercial truck driver. (AR 42.)

1. **The ALJ Was Not Obligated to Obtain Updated Medical Expert Testimony Regarding Petitioner's Mental Impairments.**

Petitioner asserts that SSR 96-6p[3] required the ALJ to call a medical expert at the hearing because Dr. Haugen's second report and the results of the MMPI-2 test[4] indicated Petitioner was

---

[3] SSR 96-6p was rescinded and replaced by SSR 17-2p effective March 27, 2017. 82 F.R. 15,263. SSR 96-6p is applied here because it was in effect when the ALJ drafted the decision appealed here.

[4] As generally understood, and as identified by Respondent, MMPI-2 refers to the "Minnesota Multiphasic Personality Inventory-2," a "psychological test that assesses personality traits and psychopathology." Resp't's. Br. 7 (Dkt. 22).

profoundly disabled by PTSD. Pet'r's Br. 3–4 (Dkt. 17); *see also* SSR 96-6p, 1996 WL 374180

(July 2, 1996). SSR 96-6p is a policy interpretation clarifying how ALJs are to consider

administrative findings of fact by medical and psychological consultants. In relevant part, it

provides that an ALJ

> must obtain an updated medical opinion from a medical expert in the following circumstances:
>
> - When no additional medical evidence is received, but in the opinion of the administrative law judge … the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
> - When additional medical evidence is received that in the opinion of the administrative law judge … may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.
>
> When an updated medical judgment as to medical equivalence is required at the administrative law judge level in either of the circumstances above, the administrative law judge must call on a medical expert.

SSR 96-6p at *3–*4. The prefatory sentence uses mandatory language in that it provides an ALJ

"must" obtain an updated medical opinion in certain circumstances. But both of the

circumstances that trigger that obligation are contingent upon the ALJ's own opinion. The first

circumstance applies when the ALJ's opinion is that the case record suggests a judgment of

equivalence may be reasonable. The second circumstance applies when the ALJ's opinion is that

additional evidence might change a consultant's finding that a claimant's impairment is not

equivalent in severity to a listed impairment. In both instances, the obligation to obtain an

updated medical opinion only applies if the ALJ holds the requisite opinion.

To the extent Petitioner asserts the ALJ held either of the two opinions that would trigger

a duty to obtain an updated opinion, the Court disagrees. Nothing in the ALJ's decision suggests

the ALJ held the opinion that a judgment of equivalence might be reasonable or that additional

medical evidence might change a consultant's finding regarding the severity of Petitioner's impairments. Lacking such an opinion, SSR 96-6p imposed no duty to obtain an updated opinion. To the extent Petitioner is instead asserting that the ALJ's Decision was not supported by substantial evidence in that "the MMPI-2 test results indicated the Petitioner was profoundly disabled by PTSD," that assertion is addressed *infra* in another section.

### 2. The ALJ Did Not Err in Assigning Little Weight to Dr. Haugen's Reports.

Dr. Haugen, Ph.D., P.A., is a licensed psychologist who conducted a consultative Mental Status Examination of Petitioner on April 15, 2013 and prepared a report. (AR 439–445.) At the request of Petitioner's counsel, Dr. Haugen subsequently administered the MMPI-2 test on August 20, 2013 and prepared a report. (AR 446.)[5]

Dr. Haugen's first report documents his opinion that Petitioner could not function in a work environment. (AR 444.) His second report documents his conclusion that Petitioner's inability to integrate a fatal automobile collision into his worldview undermines Petitioner's ability to function in a work setting. (AR 446.) However, the second report also states that Petitioner's MMPI-2 profile "was elevated on the F scale, indicating the possibility of faking bad, exacerbating his symptoms or that he feels he is in an ongoing, never ending crisis." (*Id.*) The report further documents Dr. Haugen's conclusion that "[i]t is more probable that the last is true about him." (*Id.*) Thus, Dr. Haugen acknowledged, but rejected as less likely, the possibility that Petitioner was faking bad or exacerbating his symptoms.

The ALJ gave little weight to Dr. Haugen's reports. (AR 16.) The ALJ did not weigh Dr. Haugen's statements that Petitioner is unable to work, as that ultimate conclusion is reserved to

---

[5] The record discloses Dr. Haugen's one-page summary of the test results but not the MMPI-2 test results themselves.

the Commissioner of Social Security per SSR 96-5p. (*Id.*) The ALJ further found that Dr.

Haugen's acknowledgment that Petitioner could have been "'faking bad' raises substantial

questions as to symptom exaggeration during the claimant's clinical evaluations by Dr. Haugen."

(*Id.*) The ALJ went on to state that "[t]he dubiousness of Dr. Haugen's assessment is further

compounded by the compelling fact that the claimant's primary care records show him with

minimal or mild anxiety-related complaints, and a good therapeutic response to counseling

sessions, without the need for psychotropic medications." (*Id.*) Finally, the ALJ represented that

the opinions of all consultants had been considered, as required by SSR 96-6p. (*Id.*)

Petitioner challenges the ALJ's assignment of "little weight" to Dr. Haugen's reports.

Pet'r's Br. 5–11 (Dkt. 17). He contends the ALJ was required to provide an explanation for

rejecting Dr. Haugen's medical opinion and to support the explanation with substantial evidence

from the record. (*Id.* at 6.) He also suggests that the ALJ improperly picked out isolated instances

of improvement over a period of months or years to use as a basis for finding Petitioner is

capable of working. (*Id.*) Finally, he argues that the line in Dr. Haugen's report indicating

Petitioner "produced a valid MMPI profile" precludes the possibility that he could have been

"faking bad" because doing so would have resulted in an invalid MMPI profile.[6] (*Id.* at 7.) More

to the point, Petitioner argues that the ALJ erred in not addressing Dr. Haugen's conclusion that

it is more probable that Petitioner "feels he is in an ongoing, never ending crisis" than that he is

"faking bad, [or] exacerbating his symptoms." (*Id.* at 8–11.)

---

[6] The Court declines to accept this argument because there is nothing in the record suggesting that "faking bad" is inconsistent with a "valid MMPI profile." Indeed, Dr. Haugen's report states, in back-to-back sentences, that Petitioner "produced a valid MMPI profile. He was elevated on the F scale, indicating the possibility of faking bad, exacerbating his symptoms or that he feels he is in an ongoing, never ending crisis." (AR 446.) If "faking bad" were incompatible with a valid MMPI profile, Dr. Haugen would not have needed to make both statements. Regardless, Petitioner's argument is not supported by record evidence.

The ALJ is "responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). Further, when a physician's opinion is contradicted, an ALJ may reject the opinion for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* "Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Additionally, SSA regulations provide that "[g]enerally, the more consistent a medical opinion is with the record as a whole, the more weight … will [be] give[n] to that medical opinion." 20 C.F.R. § 404.1527(c)(4).

Here, the ALJ gave significant weight to almost all of the medical opinions of record, including those of Petitioner's primary treating physician Theresa Lipsky, M.D., (AR 15), testifying medical expert Malcolm A. Brahms, M.D., (AR 14–15), State agency psychological consultants Dave Sanford, Ph.D., and Barney Greenspan, Ph.D., (AR 16), and State agency medical consultants Myung A. Song, D.O., and Robert E. Vestal, M.D. (AR 15–16). The ALJ found that these reports were consistent with each other and with the record evidence. (AR 16.) With respect to Petitioner's mental limitations in particular, the State agency psychological consultants opined that Petitioner "would have moderate difficulties in the domain of concentration, persistence, or pace, but that he would [be] capable of greater than simple or repetitive work, particularly in performing tasks with which he is already familiar." (AR 16, 74, 90.) The ALJ found "these assessments to be supported by the evidence of record, particularly the primary care records consistently describing the claimant's mental status examinations as minimal or mild." (AR 16.) The ALJ cites to the March 14, 2011 medical source statement from

Petitioner's primary care physician, Dr. Lipsky. (AR 15, 388–389.) Although that record documents "increased anxiety … [c]rying easily, feelings of panic," it also indicates that Petitioner "previously did well with counseling and no medications…. At this time [Petitioner] prefers to resume counseling, will reconsider medications and a psychiatry consult if he does not improve." (AR 388.) The ALJ also cites to a prior record of Dr. Lipsky from January 5, 2009 in which she documented that "[s]ymptoms of anxiety have currently subsided." (AR 15, 384.)

Both State agency psychological consultants opined that in his report, Dr. Haugen overestimated "the severity of the individual's restrictions/limitations" and his opinion was "based only on a snapshot of the individual's functioning." (AR 81, 97.) Both also concluded that his "opinion is not fully supported by the objective clinical findings."[7] (AR 77, 92.)

The ALJ found that Dr. Haugen's assessment of Petitioner's mental health was inconsistent with his primary care records documenting him with minimal or mild anxiety-related complaints and a good therapeutic response to counseling sessions, without the need for psychotropic medications. (AR 16.) The ALJ also noted Dr. Haugen's statement that Petitioner's MMPI-2 test suggested the possibility of "faking bad." Thus, the ALJ offered specific reasons for assigning little weight to Dr. Haugen's opinions: They were inconsistent with the evidence from multiple other medical providers, and they were tinged with the possibility that Petitioner was exaggerating his symptoms. These are specific and legitimate reasons for the ALJ to assign the weight given, and the ALJ did not err in reaching this result.

---

[7] The Court notes that the State agency consultants reviewed Dr. Haugen's first report, dated April 15, 2013 but did not review his second report, dated August 20, 2013. The second report had not been prepared when the State agency consultants examined Petitioner's file. The ALJ, however, had both of Dr. Haugen's reports. (AR 16.)

Because it is the ALJ's responsibility to weigh and resolve evidence, the fact that the evidence could be interpreted differently is irrelevant.[8] Substantial evidence supports the ALJ's decision to assign little weight to Dr. Haugen's reports and so that decision will stand.

### 3. There Is No Conflict Between Dr. Haugen's MMPI-2 Results and the ALJ's RFC Mental Limitations Findings.

The ALJ found that the Petitioner has moderate limitations in concentration, persistence, and pace. (AR 11.) Petitioner frames this finding as inconsistent with Dr. Haugen's reports and with the record as a whole. Pet'r's Br. 11–12 (Dkt. 17). Petitioner argues that Dr. Haugen performed the only psychological testing in the record and that he twice found Petitioner unemployable. *Id.* at 12.

The Court upholds the ALJ's decision to assign Dr. Haugen's reports little weight. *See supra*. In light of that holding, there is no conflict between Dr. Haugen's test results and the RFC assigned by the ALJ. Further, even if Dr. Haugen's reports were given great weight, Petitioner has not articulated how the MMPI-2 test results are inconsistent or incompatible with the assigned RFC. And as the ALJ held, Dr. Haugen's opinion on whether Petitioner is employable or not is an issue reserved to the Commissioner. SSR 96-5p, 1996 WL 374183 (July 2, 1996); 20 C.F.R. § 404.1527(d); AR 16.

Petitioner contends that "[t]he ALJ was under a duty to identify and discuss specifically why the findings of Dr. Haugen, based on the MMPI-2 and second examination, were wrong,

---

[8] Petitioner alludes to the possibility that his mental health is continuing to deteriorate. It is Petitioner's burden in the first instance to put forth sufficient evidence that he was disabled during the relevant period. The Court expresses no opinion on whether Petitioner may have become disabled at some point after the dates relevant to Petitioner's instant application for disability insurance benefits. This matter addresses only Petitioner's claim that he was disabled during the period from his alleged onset date of May 17, 2010 through his date last insured on December 31, 2015.

citing evidence in the record to support his position." Pet'r's Br. 12 (Dkt. 17). This is a misfitted description of the ALJ's duty. The ALJ is charged with "resolving conflicts in the medical record." *Carmickle*, 533 F.3d at 1164. Thus, it is not the ALJ's duty to show why any particular findings are *wrong*, but rather to cite substantial evidence supporting those findings the ALJ makes from the medical record. Because the next issue Petitioner raises challenges the mental RFC the ALJ found, this will be discussed in greater detail *infra*.

### 4. The ALJ's Mental RFC Finding Is Supported by the Record.

Petitioner argues the ALJ's mental RFC finding is not supported by substantial evidence because the ALJ failed to recognize the severity of Petitioner's PTSD. Pet'r's Br. 12–13 (Dkt. 17). Petitioner contends the ALJ improperly evaluated the severity of Petitioner's mental limitations by finding only mild limitations in activities of daily living and only moderate impairment in concentration, persistence, or pace. *Id.* Petitioner cites evidence showing that he remains at home most of the time and is severely socially withdrawn, even around his family; he avoids going into public; and he cannot use or balance a checkbook. *Id.* (citing AR 199–204).

With respect to Petitioner's activities of daily living, the ALJ found that Petitioner reported having occasional physical discomfort with performing his dress, grooming, and personal hygiene activities, but that he is able to do them without assistance. (AR 11, 199.) The ALJ further found that Petitioner reports that he is able to perform household chores such as laundry, dishes, vacuuming, and caring for the family pet, driving an automobile, and shopping for groceries with his wife. (AR 11, 200.) Petitioner does not challenge these particular findings, which are supported by Petitioner's own report in the record. These findings are consistent with the record and with mild limitations to activities of daily life. Thus, substantial evidence supports

the ALJ's finding that Petitioner suffers only mild limitations to activities of daily life and the ALJ's decision will not be disturbed on that basis.

With respect to Petitioner's concentration, persistence, or pace, the ALJ found that Petitioner suffers moderate difficulties. (AR 11–12.) The ALJ stated that notes from the consultative psychological examination with Dr. Haugen indicate Petitioner tended to give short answers throughout the interview, and appeared to have difficulty concentrating on cognitive tests of memory, abstract thinking, and judgment. *Id.* (citing AR 444). However, the ALJ also stated Petitioner's thought process was noted as logical and goal directed, he was oriented in all spheres, he was able to recall 6 digits forward and 4 digits backwards, and he could perform serial threes from 20. (AR 12, 80.) The ALJ also found that Petitioner's difficulties appeared to be primarily related to discussing his PTSD-inducing motor vehicle accident. (AR 12.) In this context, the ALJ also noted that Petitioner's F-scale score on the MMPI-2 is consistent with the possibility of faking bad, exacerbating his symptoms, or that he feels he is in an ongoing, never ending crisis. (AR 12, 446.) Separately, the Court notes that both consultative psychologists opined that Petitioner suffers from "moderate" difficulties in maintaining concentration, persistence, or pace. (AR 75, 91.)

Once again, it is the ALJ's responsibility to resolve conflicting evidence. In finding that Petitioner suffers from moderate limitation of concentration, persistence, or pace, the ALJ relied on substantial evidence showing Petitioner's thought process was logical and goal directed, he was oriented in all spheres, and he could perform simple tests of recall and calculation. The ALJ also appropriately cited record evidence suggesting that Petitioner may have been faking bad or exacerbating his symptoms, further weighing against evidence that he is more than moderately limited in concentration, persistence, or pace. Moreover, the ALJ's finding is consistent with the

opinions of the consultative psychologists, both of whom indicated Petitioner has moderate

difficulties in maintaining concentration, persistence, or pace.[9]

### 5. The ALJ Did Not Err in Finding Petitioner Could Perform Light Work Subject to Certain Limitations.

Petitioner finds fault in the ALJ's finding that Petitioner could perform "light work," as

defined by statute, while also finding that Petitioner could stand or walk no more than 2 hours

each per day. Petitioner says these standing and walking limitations are incompatible with "light

work." Pet'r's Br. 13–14 (Dkt. 17). The argument is based on the fact that SSR 83-10, which

clarifies the definition of "light work,"[10] provides in part that "the full range of light work

requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour

workday" – exceeding the 4 total hours of standing and walking in the ALJ's RFC finding. *Id.*

The ALJ did not find that Petitioner has the RFC to perform "the full range of light work"

– or even just "light work." Rather, the ALJ found that Petitioner has the RFC "to perform light

work as defined in 20 CFR 404.1567(b) *subject to the following*." (AR 12 (emphasis added).)

The ALJ then listed several specific limitations or constraints on Petitioner's capacity to perform

light work. (*Id.*) Elsewhere, the ALJ stated that Petitioner "has retained the residual functional

---

[9] The ALJ did not specifically address Petitioner's self-reported and subjective evidence relating to concentration, persistence, or pace appearing in the record at AR 200–202. However, the decision contains instances in which the ALJ found that Petitioner's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely credible. (AR 13.) In particular, the ALJ found that "the record does not show that the claimant's impairments have limited him to the extent he has alleged." (AR 14.) The ALJ also found that Petitioner's MMPI-2 test results indicated a possibility of faking bad or exacerbating symptoms. (AR 14.) Thus, in light of the ALJ's statements on Petitioner's credibility as well as the substantial evidence supporting the ALJ's finding, it was unnecessary for the ALJ to address each of Petitioner's self-reported statements relating to this issue.

[10] "Light work" is defined in 20 C.F.R. § 404.1567(b), but that definition is interpreted and expanded upon in SSR 83-10.

capacity to engage in ongoing, light work activity, *subject to the above-listed restrictions and limitations*." (AR 16 (emphasis added).) Because the ALJ expressly modified the statutory definition of "light work" to apply in Petitioner's case, the fact that the modifications render the RFC finding inconsistent with the clarified definition is of no legal significance.

Petitioner also asserts a failure to comply with SSR 96-8p, which requires that "in order for an individual to do a full range of work at any given exertional level, such as sedentary, the individual must be able to perform substantially all of the exertional and nonexertional functions required to work at that level." Pet'r's Br. 14 (Dkt. 17). Petitioner argues that the ALJ found that the Petitioner could stand and walk only 4 hours, meaning he cannot "perform substantially all of the exertional and nonexertional functions required" for light work. *Id.* However, the ALJ did not find that Petitioner is capable of "a full range of work" at any particular exertional level. Again, the ALJ found that Petitioner can perform light work subject to specific limitations. (AR 12–13.) Petitioner has shown no legal error in the ALJ's assessment or finding of his RFC.

### 6. The ALJ's Physical RFC Finding Is Supported by Substantial Evidence.

Petitioner argues there is no support for the ALJ's physical RFC finding because no physician offered a proper RFC assessment. Pet'r's Br. 14–17 (Dkt. 17). In particular, Petitioner refers to the report by consultative physical examiner Dr. Craig Stevens, M.D., which concludes:

> Based on my medical findings, this individual has intact ability to perform work-related activities that involve sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking and traveling. A reasonable accommodation of his left shoulder condition would be that he not lift greater than 25 lbs above shoulder level on the left. That is based primarily upon a subjective presentation that he presents to me.

(AR 436.) Petitioner takes issue with Dr. Stevens's report. First, he suggests it was improper for Dr. Stevens to issue a report without reviewing or commenting on the x-rays taken contemporaneously with his examination. Second, he contends Dr. Stevens did not comply with

SSA regulations because he failed to assess Petitioner's RFC as required by 20 C.F.R. § 416.946(a). Petitioner concludes that Dr. Stevens's report fails to specify "the most [Petitioner] can still do despite [his] limitations," as required by 20 C.F.R. § 416.945(a)(1), because Dr. Stevens did not quantify any time or weight limits in his report. Pet'r's Br. 16–17 (Dkt. 17).

Neither of these arguments demonstrates reversible error. In a consultative examination for purposes of evaluating whether Petitioner is disabled for SSA purposes, Dr. Stevens was not required to document the results or significance of any tests performed, including Petitioner's x-ray examinations. It is Petitioner's burden to prove his disability. 20 C.F.R. § 416.912(a)(1). Petitioner cites no medical evidence indicating that the x-rays demonstrate a disability, either alone or in combination with other symptoms. Absent such evidence, the fact that Dr. Stevens's report does not discuss the x-rays is not legally significant.

Further, Dr. Stevens issued his "Disability Determination Evaluation" report on March 28, 2013. (AR 433.) Petitioner's claim for disability insurance benefits was initially denied on April 30, 2013, approximately one month later. (AR 8.) Following the typical process, the initial determination that Petitioner is not disabled was made by "[a] State agency medical or psychological consultant and a State agency disability examiner" under 20 C.F.R. § 416.1015(c)(1). Importantly, that initial determination was not made by an ALJ. This matters because 20 C.F.R. § 416.946 – on which Petitioner relies to make his argument – places responsibility for assessing a claimant's RFC differently depending on where in the disability determination and appeal process the claimant is. Subsection (a) provides that the State agency consultant is responsible for assessing RFC when the disability determination is to be made by the State agency. Subsection (c) provides that the ALJ is responsible for assessing RFC when the ALJ is also responsible for making the ultimate disability determination. Here, Petitioner appeals

from the ALJ's decision and not from the State agency's initial denial. In issuing the decision, per 20 C.F.R. § 416.946(c), it was the ALJ – not Dr. Stevens – who was responsible for assessing Petitioner's RFC.[11] Thus, even if Dr. Stevens failed to assess a valid RFC,[12] such failure is not a sufficient reason to reverse or vacate the ALJ's decision.

Substantial evidence supports the ALJ's assessment of Petitioner's physical RFC. The ALJ's decision extensively discusses Petitioner's RFC. (AR 13–16.) The ALJ "considered the opinions of all DDS consultative sources." (AR 16.) The ALJ describes Petitioner's testimony, cites to numerous medical records, and assigns weight to medical source statements by Petitioner's primary care physician, two state DDS medical consultants, a medical expert who testified at the hearing, and others. (AR 13–16.) Having rejected Petitioner's arguments that the ALJ's RFC assessment is invalid or unsupported, there is no other basis to overturn that assessment and it will stand.

### 7. The ALJ Properly Considered All of Petitioner's Severe Conditions in Combination.

Finally, Petitioner contends the ALJ "failed to recognize the severity of the Petitioner's emotional issues and PTSD," resulting in an "RFC which did not reflect the Petitioner's true severe conditions." Pet'r's Br. 17 (Dkt. 17). Petitioner asserts this is reversible error. He further argues that "[i]f even part of Dr. Haugen's assessment was accurate, the RFC propounded by the ALJ would change significantly in the Petitioner's favor." *Id.* at 17–18. Petitioner contends that

---

[11] Petitioner could have challenged the sufficiency of Dr. Stevens's RFC assessment under 20 C.F.R. § 416.946(a) when requesting reconsideration of the initial denial; at that point subsection (a) of the regulation still applied. But after Petitioner appealed to an ALJ, subsection (c) instead of (a) applied and it became the ALJ's responsibility to assess Petitioner's RFC. At issue here is whether the ALJ's decision was correct, not whether the State agency's initial determination was correct.

[12] The Court does not opine on whether Dr. Stevens's report assessed a valid RFC, as that issue is not material to this decision.

Dr. Haugen's reports should have been weighted more significantly, and if the ALJ had done so, then the ALJ would have found that Petitioner suffered from marked or extreme (rather than moderate) limitations to concentration, persistence, or pace – which would completely change Petitioner's RFC. *Id.* at 18.

This Court understands the argument that Petitioner is attempting to make; however, there is neither argument nor evidence supporting Petitioner's contention that the ALJ failed to consider all of Petitioner's severe conditions in combination. In the decision, the ALJ acknowledged that "I must determine whether the claimant has a medically determinable impairment that is 'severe' *or a combination of impairments that is 'severe'* (20 CFR 404.1520(c))." (AR 9 (emphasis added).) Although the fact of such a description of the responsibility is arguably boilerplate, the ALJ went on to identify Petitioner's severe impairments as "degenerative disc disease of the cervical and lumbar spine, osteoarthrosis of the right wrist and hand, and posttraumatic stress disorder (PTSD)." (AR 10.) Next, the ALJ found that Petitioner "does not have an impairment *or combination of impairments* that meets or medically equals the severity of one of the listed impairments." (AR 10 (emphasis added).) Each assertion was supported by references to the record. The ALJ's consideration of the same may or may not have been spare, even though his description is spare. But, notwithstanding the amount of discussion on the topic, nothing in the decision or in the Petitioner's arguments compels a conclusion that the ALJ failed to consider Petitioner's severe impairments in combination.

To the extent Petitioner argues that the ALJ's RFC assessment would change if Dr. Haugen's reports were given more weight, such argument merely reiterates Petitioner's position that the ALJ erred in the treatment of those reports. The issue has been addressed *supra*, and it will not be further discussed here.

## IV. <u>CONCLUSION</u>

Petitioner has not shown that the ALJ's decision is unsupported by substantial evidence or otherwise contains reversible legal error. To the contrary, the ALJ's decision was supported by substantial evidence and Petitioner's arguments do not call into question the sufficiency of that evidence. Accordingly, the ALJ's decision is affirmed.

## V. <u>ORDER</u>

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is **DENIED,** the decision of the Commissioner is **AFFIRMED,** and this action is **DISMISSED** in its entirety, with prejudice.

DATED:  March 30, 2018

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge